UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 07-CR-20051 |
| ) | |
| **JOHN ERIC SIMS,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION**

This case is before the court for ruling on the Motion for Suppression of Physical Items (#13) and the Motion to Suppress Statements (#15) filed by Defendant, John Eric Sims. Following this court's careful consideration of the arguments of the parties and the evidence presented at the evidentiary hearing held in this case, Defendant's Motions (#13, #15) are DENIED.

BACKGROUND

On May 3, 2007, Defendant was charged by indictment with knowingly possessing a firearm that had the manufacturer's serial number obliterated, namely, a Springfield Armory, Model XD 40, .40 caliber, semi-automatic pistol, said firearm at one time having been transported in interstate commerce, in violation of 18 U.S.C. § 922(k). Defendant is represented by appointed counsel, Michael J. Zopf, and has been detained pending trial.

On June 13, 2007, Defendant filed a Motion for Suppression of Physical Items (#13). On June 27, 2007, Defendant filed a Memorandum in Support (#14) and also filed a Motion to Suppress Statements (#15) which included a Memorandum of Law. In his Motions, Defendant argued that the search warrant issued by Circuit Judge Mitchell Shick of Coles County, Illinois, was insufficient for various reasons. Defendant argued that the firearm he was charged with possessing was seized pursuant to the invalid search warrant and must be suppressed. Defendant also argued, citing Wong

Sun v. United States, 371 U.S. 471 (1963), that "should the court grant the motion to suppress physical items the court should similarly suppress a statement made by the defendant subsequent to his arrest where he was shown the firearm seized as a 'fruit of the poisonous tree.'"

FACTS[1]

On July 16, 2007, an evidentiary hearing commenced regarding the Motions to Suppress. The hearing was continued to August 21, 2007, and additional evidence was presented on that date. Defendant first presented the testimony of Officer Benjamin James Quick of the Charleston Police Department. Quick testified that he was asked to go to the residence of Larry Hall at 21 West Taylor Street in Charleston on April 15, 2007. He arrived at Hall's residence at approximately 6:09 p.m. At the residence, Quick approached the front door and noticed a grill on the front porch. He met with two women who identified themselves as Larry Hall's sisters. At that time, Hall was unconscious at the hospital following heart bypass surgery. The sisters wanted Defendant, who they said was living at the residence, evicted. Quick also met with an older woman who identified herself as the owner of the residence and garage at 21 West Taylor Street. The owner stated that she lived nearby, behind the residence, and stored items in the garage. She took Quick with her to look in the unattached garage of the residence because Hall's sisters were concerned that Defendant may have taken or damaged Hall's vehicles. While looking in the garage, Quick observed a pale yellow wire welder. Quick testified that the welder caught his attention because it was lying on a pile of items and did not appear to be stored properly. Quick testified that he told Hall's sisters and the owner

---

[1] No transcript of the hearings held on the Motions to Suppress has been prepared. In his Memorandum, Defendant has not provided a summary of the testimony presented at the hearings. This court has therefore relied on the Government's summary of the testimony included in its Response to Defendant's Memorandum and its own notes and recollection. This court has also considered Defendant's Reply to the Government's Response (#26) which contains a response to some of the facts included in the Government's factual summary.

that he could not force Defendant to leave the residence and that eviction would be a civil matter.

Quick testified that, later that same day, he received a call from Officer Austin Weinstock of the Toledo, Illinois, Police Department. Weinstock told him to detain Defendant. Quick went back to Hall's residence and verified that the grill on the porch was an Aussie grill, the same brand as a grill that had been reported stolen. Quick testified that he entered the residence to look for people and secure the residence for safety. Quick found Defendant and Rebecca Cline inside the residence. Quick testified that he took Defendant into custody pending a theft investigation. Rebecca Cline was placed on the front porch. Weinstock arrived at the residence with Brandon Glosser. Glosser identified the grill as his. Quick testified that Defendant was then placed under arrest. Quick testified that Defendant refused to consent to a search so Weinstock obtained a search warrant.

Defendant next presented the testimony of Larry Hall. Hall testified that Defendant has lived at his residence under an oral agreement. Hall stated that the owner of his residence is Imogene McClanahan and that he has rented from her for 13 years. Hall testified that he was admitted to the hospital on April 12, 2007, and underwent triple bypass heart surgery on April 15, 2007. He was in a coma until April 30, 2007, and was not at his residence at the time Defendant was arrested. Hall testified that Defendant gave him the Aussie grill as a gift and they assembled it from the box.

Austin Edward Weinstock was the next witness presented. Weinstock testified that he was a part-time police officer in Toledo, Illinois, in April 2007. Weinstock testified that, in April 2007, he was dispatched to a garage belonging to Gregory Glosser located in Toledo. A neighbor had complained that Defendant had created ruts in the grass of the neighbor's property when Defendant backed up a yellow Dodge pickup truck to Glosser's garage. Defendant returned to the property while Weinstock was there and repaired the damage to the grass to the satisfaction of the neighbor,

thereby resolving the neighbor's complaint.

Weinstock testified that on April 15, 2007, at 4:41 p.m., he met with John Glosser, who is Gregory Glosser's brother, and Brandon Glosser, who is Gregory Glosser's son. They told Weinstock that they believed Defendant was taking items from Gregory Glosser's garage on a regular basis while Gregory Glosser was incarcerated.[2] Among the items reported stolen was an Aussie grill belonging to Brandon Glosser, numerous tools with the initials GAG (for Gregory A. Glosser) stamped in them, and multiple welding items, including a pale yellow wire welder. Weinstock testified that, around 6:20 p.m. that day, he observed a yellow Dodge pickup truck at Toledo Park. He and Edward L. Applegate, the chief of police for Toledo, Illinois, went to the park hoping to speak with Defendant. They found the truck, but Defendant was not there. The officers spoke to John Williams from Charleston, Illinois, who was near the truck. Williams told the officers that he had come to Toledo to recover the yellow pickup truck for Hall, who was unconscious in the hospital. Williams told them that Hall's sisters had asked him to recover the truck from Defendant, so Williams contacted Defendant and made arrangements to get the truck from him. Williams said that Defendant had just left Toledo in a white Lincoln Continental belonging to Hall and was returning to Charleston. Williams also told the officers that he believed that Defendant was in possession of stolen property at Hall's residence in Charleston, including a brand new Aussie grill on the front porch of the residence that did not belong to Hall. Williams also told the officers that Hall's sisters had previously had contact with Officer Quick in Charleston

Weinstock called Quick, who told Weinstock he had seen the grill on the porch and the wire

---

[2] This court takes judicial notice that Gregory Glosser was detained by this court on March 16, 2007, in Case No. 07-CR-20042, based upon a charge of knowingly attempting to possess 500 grams or more of a mixture containing methamphetamine with the intent to distribute. Defendant acted as a confidential informant in the case against Gregory Glosser.

4

welder in the garage. Weinstock asked Quick to drive by Hall's residence to see if he could identify the type of grill. Quick did so and observed that it was an Aussie grill on the front porch. Weinstock then asked Quick to detain Defendant. Weinstock arrived at Hall's residence with Brandon Glosser and, after Glosser identified the grill as stolen from him, Defendant was arrested. Weinstock testified that, after Defendant refused to consent to a search, he obtained a search warrant to search for stolen property.

The search warrant, complaint for search warrant and affidavit, all prepared by Weinstock, were admitted into evidence. In the complaint and affidavit, Weinstock set out the information he had received regarding Defendant taking items from Gregory Glosser's property and the fact that some items identified as stolen from the Glossers had been located at Defendant's residence, including the garage area. Weinstock stated that he was seeking a search warrant for a single story ranch style residence commonly known as 21 West Taylor Avenue in Charleston, for a two-axle travel trailer parked in the driveway, for a single story detached garage located on the property, and for a 1996 white Pontiac Trans Am convertible parked in the driveway.

Based upon the complaint for search warrant and affidavit, a search warrant was signed by Coles County Circuit Judge Shick. The search warrant stated that "[u]pon examination of that complaint, I find that it states facts sufficient to show probable cause." The search warrant provided a detailed description of the residence, garage, trailer and convertible. The search warrant authorized law enforcement officers to search the four locations described. The search warrant did not include a description of any of the specific items discussed in the affidavit but just stated, as a description of the things to be seized, "[o]r any other evidence indicative of the criminal offense of Burglary, Theft or Possession of Stolen Property." The search warrant did not incorporate by reference either the complaint or affidavit.

Weinstock, Applegate and Charleston Police Officer Steve Englum executed the search warrant. Weinstock testified that they searched the residence first and then the garage. Inside the northwest bedroom closet of the residence, Weinstock found a camouflage bag that contained numerous guns and also appeared to contain an illegal silencer (which was later determined to be a suppressor). One of the guns was a Springfield Armory, Model XD 40, .40 caliber, semi-automatic pistol, with the manufacturer's serial number obliterated. Weinstock seized the pistol with the obliterated serial number, as well as the other firearms, to determine if they had been stolen. Weinstock also seized other property during the search which he believed to be stolen, including the Aussie grill and numerous tools with the initials GAG stamped in them and multiple welding items taken from the garage.

Applegate testified at the hearing regarding the inventory list he completed following the search. The inventory list was admitted into evidence. The list itemized 229 items taken during the search and noted that some of the items were marked GAG. Applegate confirmed that the gun with the obliterated serial number, the basis of the charge against Defendant in this case, was not put on the inventory list. Applegate testified that he forgot to include this gun on the list. Applegate testified that he forwarded it to the crime lab.

Defendant testified that, on April 15, 2007, Quick entered his residence and pulled him out. He testified that, after his arrest, he was held in Cumberland County and charged with burglary. He also testified that he has a valid FOID card. Defendant testified that, on April 17, 2007, he was interviewed by Dennis Fritzsche, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Defendant testified that, after Fritzsche advised him of his Miranda rights, he admitted having possession of a gun with an obliterated serial number.

The Government called Fritzsche as a witness. Fritzsche testified that Defendant told him

6

during the interview that Defendant had obtained the pistol with an obliterated serial number from Gregory Glosser before Glosser was incarcerated. Defendant told Fritzsche that he knew he could get into trouble with the pistol with the obliterated serial number.

Following the conclusion of the evidentiary hearing, this court set a briefing schedule. On September 20, 2007, Defendant filed a Memorandum of Law After Evidentiary Hearing (#24). On October 12, 2007, the Government filed its Response (#25). On October 26, 2007, Defendant filed his Reply to the Government's Response (#26). The case is now fully briefed and ready for ruling.

## ANALYSIS

Defendant argues that evidence of the gun must be suppressed because the search warrant was invalid and there is no basis for applying the good faith exception pursuant to Leon. After hearing the evidence presented at the hearings on the Motions to Suppress, this court notes that there were some problems with the police work in this case. This court also notes that the search warrant leaves much to be desired. However, following careful consideration, this court agrees with the Government that suppression of the evidence and statements is not warranted.

### I. VALIDITY OF SEARCH WARRANT

Defendant spends much of his argument asserting that law enforcement failed to comply with various Illinois statutes regarding search warrants. See 725 Ill. Comp. Stat. 5/108-3, 5/108-6 (West 2006).[3] However, the Government is correct that these statutes are not applicable to the issue of whether the evidence seized pursuant to the warrant should be suppressed based upon a violation of Defendant's Fourth Amendment rights. The Seventh Circuit has stated that it is "clear that federal

---

[3] One of the arguments made by Defendant is that state law was violated because no witness testified that a copy of the search warrant was left on the premises searched. The Government has correctly pointed out, however, that this issue was not raised in Defendant's Motions to Suppress, so no testimony was presented on a subject not at issue.

standards apply to the interpretation of the Fourth Amendment." United States v. Wilson, 169 F.3d 418, 423 (7th Cir. 1999), citing Cooper v. Cal., 386 U.S. 58, 61 (1967). Therefore, a violation of state law does not affect admissibility of evidence in the federal courts. United States v. Martin, 372 F.2d 63, 66 (7th Cir. 1967). Evidence is admissible in federal court if it was obtained in conformity with the United States Constitution and federal law; compliance or lack of compliance with local law is irrelevant. See United States v. Quintanilla, 218 F.3d 674, 678-79 (7th Cir. 2000); United States v. Singer, 943 F.2d 758, 761 (7th Cir. 1991).

In support of his position that Illinois statutes are relevant to this court's analysis in this case, Defendant has cited a portion of Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment (4th ed. 2004). In the pages cited, LaFave discussed State v. Mollica, 554 A.2d 1315 (N.J. 1989), a decision of the New Jersey Supreme Court which has no conceivable application to this case. See LaFave, Search and Seizure, Vol. 1, pp. 185-86. In fact, in the relevant portions of his treatise, LaFave specifically recognized that statutory requirements such as those cited by Defendant "are not generally viewed as being important enough to merit enforcement through the exclusionary rule." LaFave, Search and Seizure, Vol 1, p. 165-66.[4] LaFave further recognized that, in determining whether evidence should be suppressed, "[t]he test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." LaFave, Search and Seizure, Vol. 1, p. 178, quoting Elkins v. United States, 364 U.S. 206, 224 (1960).

Defendant does also argue that Quick entered the house without a warrant or exigent circumstances to conduct an unwarranted "protective sweep" and that, when Quick took Defendant

---

[4] In fact, Illinois law specifically provides that "[n]o warrant shall be quashed nor evidence suppressed because of technical irregularities not affecting the substantial rights of the accused." 725 Ill. Comp. Stat. 5/108-14 (West 2006).

into custody, Defendant was arrested without probable cause because Quick had only a hunch that Defendant was involved in criminal activity. This court agrees that Quick's actions in entering the house and taking Defendant into custody cannot be justified.[5] However, this court further concludes that the Government is correct that these facts do not make the search warrant invalid. The Government argues that the detention and arrest of Defendant were completely independent of any information that was used to obtain the search warrant in this case. This court agrees.

The "exclusionary rule operates to prevent the Government from using evidence seized as the result of an illegal search in a subsequent criminal prosecution." United States v. Harju, 466 F.3d 602, 605 (7th Cir. 2006). The "'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.'" Harju, 466 F.3d at 605. "The Supreme Court has determined that 'the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position than they would have been in if no police error or misconduct occurred." United States v. May, 214 F.3d 900, 906 (7th Cir. 2000) (emphasis in original), quoting Murray v. United States, 487 U.S. 533, 537 (1988). "Excluding evidence that the police ultimately obtained by independent legal means would not put the police in the same position they would have been in if they had not committed any illegal conduct; instead it would put them in a worse position." May, 214 F.3d at 906, citing Murray, 487 U.S. at 537. "The independent source doctrine avoids this by allowing the introduction of evidence discovered initially during an unlawful search if the evidence is discovered later through a source that is untainted by the initial illegality." May, 214 F.3d at 906, citing Murray, 487 U.S. at 537. Therefore, in Segura v. United States, the United States Supreme

---

[5] This court does conclude that, after Brandon Glosser identified the Aussie grill as stolen from him, the officers had probable cause to arrest Defendant.

Court "held that police officers' illegal entry upon private premises did not require suppression of evidence subsequently discovered at those premises when executing a search warrant obtained on the basis of information wholly unconnected with the initial entry." Murray, 487 U.S. at 535, citing Segura v. United States, 468 U.S. 796 (1984). Therefore, if the complaint for search warrant and affidavit contained sufficient information to establish probable cause without any of the information improperly obtained by Quick, the evidence seized pursuant to the execution of the search warrant is not subject to suppression. See May, 214 F.3d at 906-07.

"Probable cause exists when, considering all the circumstances, the affidavit sets forth sufficient facts to induce a reasonably prudent person to believe that a search will uncover contraband or evidence of a crime." United States v. Sidwell, 440 F.3d 865, 868 (7th Cir. 2006). "The issuing judge must determine if probable cause exists by 'making a practical, common-sense decision.'" United States v. Walker, 237 F.3d 845, 850 (7th Cir. 2001), quoting Illinois v. Gates, 462 U.S. 213, 238 (1982); see also Sidwell, 440 F.3d at 868. Probable cause does not require absolute certainty, but "only a probability or substantial chance that evidence may be found." Sidwell, 440 F.3d at 869.

This court has carefully reviewed the complaint for search warrant and Weinstock's affidavit, which was attached to the complaint and was specifically incorporated by reference. This court concludes that the information provided regarding Defendant taking items from Gregory Glosser's property and the information that some items identified as stolen from the Glossers had been located at Defendant's residence, including the front porch of the residence and the garage area, was sufficient to establish probable cause to search.[6] This court agrees with the Government that

---

[6] This court notes that the information obtained from Quick regarding the wire welder located in the garage could be considered in determining the existence of probable cause. Quick properly looked into the garage based upon the consent of the owner, Imogene McClanahan.

Weinstock had received information regarding stolen items, including tools, and it was not unreasonable for Weinstock to believe that some of the items might be hidden in the residence after they were stolen. This court agrees with the Government that, given that other items reported to be stolen were found in various locations on the property, a reasonably prudent person could believe that a search inside the house, as well as in the garage, trailer, and automobile, might uncover the tools. Therefore, the affidavit established probable cause to search the house and the other listed locations. See Russell v. Harms, 397 F.3d 458, 463 (7th Cir. 2005). This court notes that the affidavit did include a brief statement that Quick had observed weapons inside the house. Apparently, Quick made this observation when he entered the house to detain Defendant. However, this brief mention of weapons was not necessary to establish probable cause.[7] Defendant has also asserted that Quick asked Defendant questions without advising him of his rights under Miranda. Defendant did not make any statements at that time, so no information was included in the affidavit based upon any improper questioning by Quick. Because the complaint for search warrant and affidavit contained sufficient information to establish probable cause without any information improperly obtained by Quick, the evidence seized pursuant to the execution of the search warrant is not subject to suppression on this basis. See May, 214 F.3d at 906-07.

      This court notes that Defendant has argued that there was no probable cause to search the house, arguing that a search warrant authorizing the search of a house must be based upon a higher standard of probable cause. This court agrees with the Government that there is no support for Defendant's argument. The Government is correct that the Fourth Amendment requires a search

---

[7] Defendant has argued that the mention of weapons in the affidavit did nothing to establish probable cause because it is not illegal to possess a firearm absent a prior felony conviction or the failure to obtain a firearms identification (FOID) card. However, this court has not considered the information regarding weapons in determining whether the complaint and affidavit were sufficient to establish probable cause for the issuance of the search warrant.

warrant to be based upon probable cause and this is the standard to apply when the search warrant authorizes the search of a residence. See, e.g., Sidwell, 440 F.3d at 868-69; Russell, 397 F.3d at 463. This court has already concluded that the search warrant in this case was based upon probable cause, so this argument fails.

Defendant also argues that the warrant itself was invalid. Defendant points out that the affidavit in support of the search warrant does not include any mention of the firearm in question. He argues that Fritzsche had knowledge of this firearm so it should have been included in the search warrant. The Government has pointed out, however, that Fritzsche was not involved in obtaining or executing the search warrant. This court agrees there is no merit to this argument. Defendant has also asserted that the warrant did not adequately describe the place to be searched. This court agrees with the Government that there is no merit to this argument because the warrant contains a very detailed description of the residence, garage, trailer and vehicle to be searched.

Defendant also argues that the conclusory phrase in the warrant, "[o]r any other evidence indicative of the criminal offense of Burglary, Theft or Possession of Stolen Property" is not sufficient to meet the standard set out by the United States Supreme Court in Groh v. Ramirez, 540 U.S. 551 (2004). In Groh, the search warrant at issue "failed to identify any of the items that [the law enforcement officer] intended to seize." Groh, 540 U.S. at 554. In addition, the warrant did not incorporate by reference the itemized list contained in the application. Groh, 540 U.S. at 554-55. The owners of the property searched filed a civil lawsuit, and on appeal from the district court's grant of summary judgment to the defendants, the Ninth Circuit Court of Appeals reversed as to the Fourth Amendment claim against the officer who requested the search warrant and led the execution of the warrant. Groh, 540 U.S. at 553-56. The Court of Appeals held that the warrant was invalid because it did not "describe with particularity the place to be searched and the items to be seized,"

as required by the Fourth Amendment.  Groh, 540 U.S. at 556.  The case proceeded to the Supreme Court, which affirmed.  The Court stated:

> The warrant was plainly invalid.  The Fourth Amendment states unambiguously that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized*.

Groh, 540 U.S. at 557 (emphasis in original).  The Court concluded that the fact that the application included a list of items to be seized did not save the warrant from its facial invalidity because the warrant did not incorporate the application by reference and the "Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents."  Groh, 540 U.S. at 557.  The Court stated:

> In other words, the warrant did not describe the items to be seized *at all*.  In this respect the warrant was so obviously deficient that we must regard the search as "warrantless" within the meaning of our case law.

Groh, 540 U.S. at 558.  The Court further concluded that "[g]iven that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid."  Groh, 540 U.S. at 563.

In response to Defendant's citation to Groh, the Government argues that this case is distinguishable because the search warrant in this case particularly described "the things to be seized" as "evidence indicative of the criminal offense of Burglary, Theft or Possession of Stolen Property."  The Government contends that, unlike Groh, this is not a complete and total failure to

describe the items to be seized.

 This court concludes that this is a close case. The description provided in the search warrant is certainly lacking in detail, and the warrant does not incorporate by reference Weinstock's affidavit, which did include a description of particular items, such as the Aussie grill and yellow welder. However, this court agrees with the Government that Groh is distinguishable because the warrant in this case did include a description of the things to be seized. The Seventh Circuit has stated that, while a warrant must "describe the objects of the search with reasonable specificity, it need not be elaborately detailed." United States v. Jones, 54 F.3d 1285, 1290 (7th Cir. 1995). A warrant need not "enable authorities to 'minutely identify every item for which they are searching.'" United States v. Shoffner, 826 F.2d 619, 630 (7th Cir. 1987), quoting United States v. Pritchard, 745 F.2d 1112, 1122 (7th Cir. 1984). It is sufficient if the executing officers are able "to identify the things to be seized with reasonable certainty." Jones, 54 F.3d at 1290. "If detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." United States v. Hall, 142 F.3d 988, 996 (7th Cir. 1998).

 In addition, this court agrees with the Government that, even though the warrant did not contain a detailed list of the specific items to be seized, suppression of the evidence is an inappropriate consequence where the seizure did not invade the property and privacy interests of the owner of the premises "beyond what is necessary to achieve a valid law enforcement purpose as determined by a judicial officer." See United States v. Stefonek, 179 F.3d 1030, 1033 (7th Cir. 1999). In Stefonek, federal investigators applied for a warrant to search an office for certain business records, including a description of the documents to be seized in an affidavit attached to the warrant application. Stefonek, 179 F.3d at 1032. The warrant itself, however, listed only "evidence of crime" with respect to the things to be seized, and, as is the case here, did not

incorporate the affidavit by reference. Stefonek, 179 F.3d at 1032-33. In ruling that suppression of the evidence recovered during the execution of the search warrant would be a disproportionate sanction, the Seventh Circuit found it relevant that some of the same agents executing the search were the ones who had prepared the application and affidavit, that the agents did not exceed the limited scope of the application and affidavit, and that "exactly the same evidence would have been seized, had the warrant complied with the Constitution [and] repeated the application's description of the things to be seized." Stefonek, 179 F.3d at 1034. The Seventh Circuit stated, "[w]here a violation of the particularity requirement of the Fourth Amendment can be to shown to have had no causal relation to the scope of the search or to the quantity or character of evidence seized, suppression of the evidence is not a proper sanction." Stefonek, 179 F.3d at 1035-36.

      This court agrees with the Government that, like the agents in Stefonek, Weinstock prepared the affidavit, participated in the search, and knew the scope of the search. Importantly, all of the items seized would have been seized even if the warrant had repeated the affidavit's list of items. Because the failure to list items on the warrant did not unnecessarily harm Defendant's property or possessory interest, suppression of the gun recovered during the execution of the search warrant is not warranted. See Stefonek, 179 F.3d at 1035-36; see also United States v. Espinoza, 256 F.3d 718, 725-28 (7th Cir. 2001) (determining, based upon Stefonek, that suppression of evidence was not warranted where police officers failed to comply with the "knock and announce" requirement). This court further agrees that this case is a much stronger case for upholding the search than Stefonek because the warrant in Stefonek authorized a search for "evidence of crime" while the warrant here more specifically referred to evidence indicative of the criminal offense of burglary, theft, or possession of stolen property.

      Based upon the Seventh Circuit case law cited, this court concludes that suppression of the

evidence is not warranted based upon the description provided in the warrant.

## II. GOOD FAITH EXCEPTION

In any case, this court agrees with the Government that the good faith exception set out in United States v. Leon, 468 U.S. 897 (1984) applies in this case.

Defendant argues that the Government cannot claim good faith pursuant to Leon because: (1) the arrest of Defendant at his home was improper; (2) the execution of the search warrant was fundamentally flawed in violation of Illinois statutes; (3) the officers did not act in good faith because they "recovered every named item and still searched the residence";[8] (4) the search warrant was lacking in specificity; (5) Fritzsche misstated the law during his testimony at the evidentiary hearing[9]; and (6) Applegate failed to list the "very weapon that is the subject of this indictment" on the inventory form.

Under the good faith exception to the exclusionary rule, courts will not suppress evidence when a police officer relies in objective good faith on a faulty but facially valid search warrant. See Leon, 468 U.S. at 926. This court further notes that "[a]n officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith." United States v. Koerth, 312 F.3d 862, 868 (7th Cir. 2002). Two ways that the defendant may rebut this prima facie case are by presenting evidence to establish either that: (1) the magistrate "wholly abandoned his judicial role"

---

[8] This argument is hard to reconcile with Weinstock's uncontradicted testimony that the residence was searched first.

[9] According to Defendant, Fritzsche testified that a FOID card is automatically revoked when the card holder is charged with a felony. Defendant asserts that this is a misstatement of Illinois law. The Government has not conceded that Fritzsche made any misstatement. In any event, this court agrees with the Government that it is nonsensical to suggest that testimony by Fritzsche at the evidentiary hearing, months after the search warrant was issued, has any bearing on the reasonable good faith reliance on the search warrant of the officers who actually obtained and executed the warrant.

or otherwise failed in his duty to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police;" or (2) the officer submitted an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Koerth, 312 F.3d at 868, quoting Leon, 468 U.S. at 914, 923.  In this case, Defendant has not argued that Judge Shick "abandoned his judicial role" or was not "neutral and detached."  Further, the various arguments Defendant has raised do not in any way show that the affidavit prepared by Weinstock was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  This court therefore concludes that Defendant has not rebutted the presumption of good faith.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Suppression of Physical Items (#13) and Motion to Suppress Statements (#15) are DENIED.

(2) This case remains scheduled for a status conference on November 2, 2007, at 9:15 a.m.

ENTERED this 2nd day of November, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE